**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

DARRYL T. WILSON                                    *

     Plaintiff,                                    *

     v.                                                    *                Civil No.: BPG-20-869

OFFICER ENOS DETWEILER, *et al.*            *

     Defendants                                   *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**<u>MEMORANDUM OPINION</u>**

The above-referenced case was referred to the undersigned for all proceedings with the consent of the parties, pursuant to 28 U.S.C. 636(c) and Local Rule 301.4.  (ECF No. 19). Currently pending are defendants' Detweiler and Brown's Motion for Summary Judgment ("Motion") (ECF No. 28), plaintiff's Opposition to defendants' Motion for Summary Judgment ("Opposition") (ECF No. 31), and defendants' Detweiler and Brown's Reply to plaintiff's Opposition to Motion for Summary Judgment ("Reply") (ECF No. 32).  No hearing is deemed necessary.  Loc. R. 105.6.  For the reasons discussed herein, defendants' Detweiler and Brown's Motion for Summary Judgment (ECF No. 28) is GRANTED.


I.      **<u>BACKGROUND</u>**

In ruling on a motion for summary judgment, this court considers the facts and draws all reasonable inferences in the light most favorable to the nonmoving party, which is the plaintiff in this case.  <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  On October 18, 2018, defendants Officer Enos Detweiler and Officer Jakob Brown (collectively, "the defendants") arrived at 106 Mike

Court, Elkton, Maryland ("the house"), in response to a call from plaintiff's wife, Megan Wilson, about a physical altercation.  (ECF No. 28-3 at 23:7-8).  While en route to plaintiff's house, dispatch informed defendants over the radio that there was a protective order against plaintiff that needed to be served by the sheriff's department.  (Id. at 24:18-20).  Additionally, Officer Greg Brown informed defendants over the radio that Ms. Wilson had filed criminal charges for second degree assault against plaintiff and that there was a warrant for plaintiff's arrest.  (Id. at 24:22-25:10; ECF No. 28-4 at ¶¶ 4, 5).

When defendants arrived at the house, and after Ms. Wilson opened the door, defendants began their exchange with plaintiff by asking him to step outside.  (ECF No. 31-11, def. Brown video, at 1:17).[1]  The events thereafter were captured on defendants' body-worn cameras and videos of the encounter have been provided to, and reviewed by, the court.  Defendants entered the house, where plaintiff was in a room with Ms. Wilson and a young child.  (Id.)  For several minutes, plaintiff and defendants discussed the protective order that needed to be served on plaintiff and how it would affect plaintiff's ability to stay in the house.  (Id. at 1:18-5:50).  During this time, Ms. Wilson and the child left the room.  (Id. at 2:27-2:32).  Despite defendants' many requests that plaintiff leave the house, plaintiff refused to leave multiple times.  (Id.)  Defendants asked for plaintiff's identification several times, which plaintiff said was in his car.  (Id. at 5:48).  Defendants asked plaintiff to step outside and get his identification, and advised plaintiff that he

---

[1] After defendants arrived at the house, the events that took place were captured on both of defendants' body-worn cameras.  Both plaintiff and defendants submitted video from defendants' body-worn cameras as exhibits to their respective briefings.  (ECF No. 28-6; ECF No. 31-11).  The court was unable to watch defendants' video exhibit.  In response to an inquiry from the court, the parties agreed that the court could use plaintiff's video exhibit including both defendants' body-worn camera videos, as the parties' joint submission.  (ECF Nos. 33, 34).

would need to remain outside after retrieving his identification until he was served with the protective order.  (Id. at 5:48-5:50).

After plaintiff stated that defendants could not keep him from re-entering the house, defendant Brown told plaintiff to turn around and put his hands behind his back.  (Id. at 5:50-5:56). Plaintiff backed away from defendants with his arms in the air.  (Id. at 5:53-5:56).  Defendant Brown repeated the instruction for plaintiff to turn around and put his hands behind his back five more times as defendants approached plaintiff and attempted to place plaintiff's hands behind his back.  (Id. at 5:56-6:18).  Plaintiff continued to hold his arms up, asked defendants not to touch him, and subsequently asked why defendants were touching him and "being physical" with him. (Id.)  Defendants said that plaintiff was "not complying."  (Id. at 6:17).  Defendants stated twice more that plaintiff should put his hands behind his back, and plaintiff said that defendants were "attacking [him] in his own home."  (Id. at 6:18-6:36).  At this point, the body-worn camera footage does not clearly depict what happens as both officers were moving during this time, but both defendants and plaintiff agree that defendant Brown grabbed plaintiff and took him to the ground with his head and chest pointed down.  (ECF No. 28-5 at 71:18-19; ECF No. 31-4 at 44:15-16). Plaintiff maintains that he hit the side of his head on the floor.  (ECF No. 31-4 at 16-17).  This series of events took place over approximately one and a half minutes.  (ECF No. 31-11, def. Brown video, at 6:36-8:02).  Defendant Brown said that he took plaintiff to the ground "because [plaintiff] was pulling away from [defendants].  He wasn't giving us his hands and complying. And then at one point he was pushing or pulling us into the kitchen area."  (ECF No. 28-5 at 71:21-72:2).  Plaintiff testified that he "was trying to step away from [defendants]" and "pulling in the opposite direction."  (ECF No. 28-2 at 46:10-14, 47:2-8).  When defendants' body-worn camera footage becomes clear again, it depicts plaintiff lying face-down on the floor with his hands

handcuffed behind his back.  (Id. at 8:03).  Defendants then walked plaintiff outside to a police cruiser.  (Id. at 9:00-9:25).

Plaintiff was not informed of the warrant for his arrest prior to being arrested, but defendants mentioned the warrant multiple times after the arrest, once before plaintiff and defendants walked outside to the police cruiser and twice after plaintiff and defendants were standing outside by the police cruiser.  (Id. at 8:30, 10:00, 13:30).  Defendant Brown transported plaintiff to the Elkton Police Department.  (ECF No. 28-5 at 84:22-85:2).  Plaintiff advised, after arriving at the police department, that he needed medical attention.  (Id. at 85:6-7).  Plaintiff received care at Union Hospital, where he reported that he received an x-ray and a CT scan, but did not recall being told he had any fractures or sprains.[2]  (Id. at 87:10-11; ECF No. 31-4 at 78:7-15).  Plaintiff "did [his] own physical therapy directly after," but did not see a doctor and begin professional physical therapy until June 2020, after this lawsuit was filed.  (Id. at 80:1-13).

Defendant Detweiler filed three criminal charges against plaintiff subsequent to plaintiff's arrest: 1) "willfully failing to obey a reasonable and lawful order" pursuant to Md. Code Ann. Crim. Law § 10-201(c)(3); 2)  obstructing and hindering a law enforcement officer in the performance of his duties; and 3) intentionally resisting a lawful arrest pursuant to Md. Code Ann. Crim. Law § 9-408(b)(1).  (ECF No. 28-8).  Defendant Detweiler's Statement of Probable Cause contained a description of the defendants' interaction with plaintiff, defendants' attempt to place plaintiff under arrest, and plaintiff's resistance to that arrest.  (Id. at 3-4).  The Statement of Probable Cause did not mention that defendants did not inform plaintiff of the active warrant prior

---

[2] No records regarding plaintiff's treatment at Union Hospital were submitted for the court's review.

to plaintiff's arrest.  On March 4, 2019, plaintiff had a bench trial in the Circuit Court for Cecil County and was acquitted on all three charges.  (ECF No. 31-3).

Plaintiff filed this complaint on April 1, 2020, naming defendants Detweiler, Brown, the Town of Elkton, and the Elkton Police Department.  (ECF No. 1).  Plaintiff's complaint included 12 counts: Count 1 – 42 U.S.C. § 1983 ("§ 1983") for unlawful search and seizure against defendants Detweiler and Brown; Count 2 - § 1983 for malicious prosecution against defendants Detweiler and Brown; Count 3 – battery against defendants Detweiler and Brown; Count 4 – false arrest against defendants Detweiler and Brown; Count 5 – false imprisonment against defendants Detweiler and Brown; Count 6 – Maryland Declaration of Rights Article 24 against defendants Detweiler and Brown; Count 7 – Maryland Declaration of Rights Article 26 against defendants Detweiler and Brown; Count 8 – malicious prosecution against defendants Detweiler and Brown; Count 9 – abuse of process against defendants Detweiler and Brown; Count 10 – intentional infliction of emotional distress against defendants Detweiler, Brown, Town of Elkton, and Elkton Police Department; Count 11 – negligent hiring, retention, and supervision against defendants Town of Elkton and Elkton Police Department; and Count 12 – indemnification against defendants Town of Elkton and Elkton Police Department.  (Id.)

Defendants Detweiler and Brown filed a Motion for Partial Dismissal or for Partial Summary Judgment (ECF No. 6), which the court granted in part and denied in part.  The court dismissed Count 9 – abuse of process and Count 10 – intentional infliction of emotional distress without prejudice and dismissed Count 1 – § 1983 for unlawful search and seizure and Count 2 – § 1983 for malicious prosecution against defendants Detweiler and Brown in their official capacities with prejudice.  (ECF No. 14).  Defendants Town of Elkton and the Elkton Police Department filed a Motion to Partially Dismiss or, Alternative, for Partial Summary Judgment

(ECF No. 8) which the court granted, dismissing the counts against the Elkton Police Department with prejudice and the counts against the Town of Elkton without prejudice. (ECF No. 14). Plaintiff did not file an amended complaint.

Therefore, the remaining defendants are Detweiler and Brown and the remaining counts are: Count 1 – § 1983 for unlawful search and seizure; Count 2 – § 1983 for malicious prosecution; Count 3 – battery under state law; Count 4 – false arrest under state law; Count 5 – false imprisonment under state law; Count 6 – claim for violation of Maryland Declaration of Rights Article 24 protections against unlawful incarceration; Count 7 – claim for violation of Maryland Declaration of Rights Article 26 protections against arrest, false imprisonment, and excessive force; and Count 8 – malicious prosecution under state law.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is properly considered "material" only if it might affect the outcome of the case under the governing law. Id. The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); Pulliam Inv. Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(c); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993). If a party

fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party, but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  Anderson, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue.  Celotex, 477 U.S. at 324.  A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment.  Anderson, 477 U.S. at 252.  Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact.  Cox v. Cnty. of Prince William, 249 F.3d 295, 299-300 (4th Cir. 2001).  Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party.  Anderson, 477 U.S. at 252.

## III.   <u>DISCUSSION</u>

Plaintiff's claims are discussed below in relation to his interactions with defendants as follows: 1) plaintiff's alleged unlawful arrest and imprisonment; 2) defendants' alleged malicious prosecution of plaintiff based on the three charges brought by defendant Detweiler following plaintiff's arrest; and 3) defendants' alleged use of excessive force during their arrest of plaintiff.

In addition, defendants' argument that they are entitled to qualified immunity as to plaintiff's federal claims is addressed.

### A.  Unlawful Arrest and Imprisonment

Plaintiff asserts several constitutional and state law violations arising out of his alleged unlawful arrest and imprisonment: 1) Count 1 – § 1983 claim for violation of Fourth Amendment protections against unlawful search and seizure; 2) Count 4 – false arrest under state law; 3) Count 5 – false imprisonment under state law; 4) Count 6 – claim for violation of Maryland Declaration of Rights Article 24 protections against unlawful incarceration; and 5) Count 7 – claim for violation of Maryland Declaration of Rights Article 26 protections against arrest and false imprisonment.[3]  (ECF No. 1).  The court addresses plaintiff's constitutional claims, plaintiff's Maryland Declaration of Rights claims, and plaintiff's state law claims below.

#### 1.  Constitutional Claims

In Count 1, plaintiff asserts a § 1983 claim for violation of Fourth Amendment protections against unlawful search and seizure in which he alleges that his Fourth and Fourteenth Amendment rights were violated by defendants' unlawful arrest and imprisonment of him.  (ECF No. 1). Defendants argue that summary judgment is appropriate because plaintiff was arrested pursuant to a valid arrest warrant and, therefore, plaintiff's constitutional and state rights were not violated. (ECF No. 28-1 at 8-10).  Plaintiff argues that his arrest and imprisonment was unlawful because defendants did not know of plaintiff's arrest warrant at the time of his arrest and did not tell plaintiff about the arrest warrant prior to plaintiff's arrest.  (ECF No. 31 at 6).

---

[3] Plaintiff also brings another claim in Count 7 for excessive force, which is discussed below.

Plaintiff's Fourth and Fourteenth Amendment rights with regard to his alleged unlawful arrest are co-extensive.  Peacock v. Mayor & City Council of Balt., 199 F. Supp. 2d 306, 310 (D. Md. 2002); see also Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1138 (4th Cir.1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991) ("The constitutional rights asserted by [plaintiff] in these [§] 1983 claims must be sought ultimately in the [F]ourth amendment as made applicable to state action by the [F]ourteenth.  For it is from the 'Fourth Amendment and its common-law antecedents' that 'the standards and procedures for arrest and detention have been derived.'" (quoting Gerstein v. Pugh, 420 U.S. 103, 111, (1974))).  To defeat summary judgment on his constitutional violation claims, plaintiff must establish a genuine issue of material fact regarding whether "[defendants] deprived him of a right secured by the Constitution of the United States, and that any such deprivation was achieved under color of law."  Paul v. Davis, 424 U.S. 693, 696-97 (1976) (citing Adickes v. Kress & Co., 398 U.S. 144, 150 (1970)).  "In the Fourth Circuit, an arrest is acceptable under the Fourth Amendment if made pursuant to a valid arrest warrant."  Souder v. Toncession, No. AW-07-1996, 2009 WL 4348831, at *3 (D. Md. Nov. 30, 2009) (citing Peacock v. Mayor & City Council of Balt., 199 F. Supp. 2d 306, 309 (D. Md. 2002)); see also Mitchell v. Aluisi, 872 F.2d 577, 579 (4th Cir. 1989).

Here, it is undisputed that a valid arrest warrant existed at the time of plaintiff's arrest. Plaintiff argues, however, that his constitutional rights were violated because defendants did not inform plaintiff of this warrant before his arrest while the parties were speaking to him in his house. Plaintiff further asserts that defendants did not know there was a warrant because after he was taken out to the police cruiser, defendants stated that they believed plaintiff "might" have a warrant, but that they "needed to verify [it]."  (ECF No. 31-11, def. Brown video, at 10:00, 13:30). Plaintiff argues that defendants' actions were "not . . . objectively reasonable" because, according

to plaintiff's expert Dr. Tyrone Powers, defendants should have told plaintiff what was happening before taking action.[4] (ECF No. 31 at 7; ECF No. 31-6 at 36:15-16). Plaintiff notes that the Elkton Police Department, defendants' employer, also acknowledged that defendant Brown "could have handled the situation differently and as a result he will receive formal counseling and additional training in arrest procedures." (ECF No. 31-8). Relying on defendants' testimony at plaintiff's criminal trial, plaintiff argues that plaintiff was arrested not because of the arrest warrant but because of plaintiff's refusal to retrieve his identification. (ECF No. 31 at 7-9).

The record, however, reflects that defendants were aware of plaintiff's arrest warrant before engaging with him. Both defendants testified that they were aware of the warrant prior to entering plaintiff's home, but did not mention the warrant or immediately arrest plaintiff because they did not want to arrest him while plaintiff was in the house in front of his children.[5] (ECF No. 31-3 at 11:9-10, 14:10, 22-23, 25:11-12, 26:3-9). Officer Greg Brown also signed an affidavit stating that he informed defendants of the warrant as they were en route to plaintiff's house. (ECF No. 28-4 at ¶¶ 4, 5). Plaintiff argues that there is no independent source of verification for these facts, besides the affidavits and testimony of defendants and Officer Greg Brown, and, therefore, a genuine dispute of material fact exists. (ECF No. 31 at 10). Contrary to plaintiff's assertion, however, there is no evidence of record establishing that defendants did not know of the warrant. While the Elkton Police Department and plaintiff's expert Dr. Powers may believe defendants did not handle the situation appropriately, the pertinent issue is whether plaintiff's federal or state

---

[4] While plaintiff's expert Dr. Powers opines on defendants' actions leading up to plaintiff's arrest, Dr. Powers stated that his expertise is specifically on the subject of use of force. (ECF No. 31-6 at 5:19-22).
[5] Both defendants mention plaintiff's "children" although only one child is visible on defendants' body-worn camera footage. (ECF No. 31-3 at 11:9-10, 14:10, 22-23, 25:11-12, 26:3-9; ECF No. 31-11, def. Brown video, at 1:17).

rights were violated and not whether defendants could have handled the situation differently.  See Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."). While plaintiff argues that defendants did not tell him about the warrant prior to the arrest, plaintiff has failed to cite any caselaw, and the court has not found any law, stating that a person must be informed of a warrant prior to their arrest.  As defendant Brown stated at plaintiff's criminal trial, "I don't have to come out and say, hey, you have an arrest warrant.  If I did that, people would run every five seconds."  (ECF No. 31-1 at 36:20-37:5).  Accordingly, because there was a valid arrest warrant for plaintiff at the time of his arrest, plaintiff's arrest did not violate his Fourth or Fourteenth Amendment rights.  Therefore, summary judgment for defendants on Count 1 is warranted.

### 2. Maryland Declaration of Rights Claims

In Counts 6 and 7, plaintiff asserts claims based upon Articles 24 and 26 of the Maryland Declaration of Rights arising out of defendants' unlawful arrest and imprisonment of plaintiff. (ECF No. 1 ¶¶ 63-68).  Defendants argue that, due to the valid arrest warrant, there is no genuine issue of material fact regarding these claims and defendants should be granted summary judgment. (ECF No. 28-1 at 8-10).  "Article 24 protects substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures; courts therefore construe the provisions in pari materia with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively."  Hayes v. City of Seat Pleasant, No. DKC-08-2548, 2010 WL 3703291, at *4 (D. Md. Sept. 16, 2010), rev'd on other grounds, 469 Fed. App'x 169 (4th Cir. 2012) (citing Canaj, Inc. v. Baker & Div. Phase III, 391 Md. 374, 424, 893 A.2d 1067 (2006), Carter v. State, 367 Md. 447, 458, 788 A.2d 646, 652 (2002)).  "To prevail under any claim alleging violations of Maryland

constitutional rights [against a police officer] . . . proof must be adduced: 1) [t]hat the defendant-officer engaged in activity that violated a right protected under the Maryland Constitution; and 2) [t]he defendant-officer engaged in such activity with actual malice towards the plaintiff." Rivero v. Montgomery Cnty., Maryland, 259 F. Supp. 3d 334, 350 (D. Md. 2017) (quoting Dehn Motor Sales, LLC v. Schultz, 439 Md. 460, 486, 96 A.3d 221, 237 (2014)).  Actual malice is defined as "evil motive, intent to injure, ill will, or fraud." Id. (quoting Owens-Illinois, Inc. v. Zenobia, 325 Md. 420, 460, 601 A.2d 633, 652 (1992)).

Here, given that the claims asserted by plaintiff are in pari materia with the Fourth and Fourteenth Amendments, the Fourth and Fourteenth Amendments analysis discussed above applies equally to the Maryland Declaration of Rights claims. See DiPino v. Davis, 354 Md. 18, 43-44, 729 A.2d 354, 367 (1999) ("Although in certain contexts the contours of the State Constitutional rights are not precisely those of the Federal—we have recognized some differences with regard to some of them—in the context presented here they are essentially the same."); see also Gadson v. State, 341 Md. 1, 668 A.2d 22 (1995) (stating that Article 26 is in pari materia with the Fourth Amendment), Kirsch v. Prince George's Cnty., 331 Md. 89, 626 A.2d 372 (1993) (construing due process and equal protection rights embodied in Article 24 in pari materia with comparable rights in Fourteenth Amendment).  Therefore, there is no genuine issue of material fact as to the first prong of the Maryland Declaration of Rights analysis in that plaintiff cannot establish a violation of his rights given that he was lawfully arrested pursuant to an arrest warrant. Even if plaintiff could satisfy the first prong, there is no evidence of actual malice as required by the second prong of the Maryland Declaration of Rights analysis.  The record here is devoid of any evidence of "evil motive, intent to injure, ill will, or fraud." Rivero, 259 F. Supp. 3d at 350. Accordingly, summary judgment for defendants as to Counts 6 and 7 is appropriate.

### 3.  State Law Claims

Defendants also argue that summary judgment is proper because no genuine issues of material fact exist regarding plaintiff's state law claims relating to his arrest: Count 4 – false arrest under state law; and Count 5 – false imprisonment under state law.  (ECF No. 28-1 at 9-10).  "The elements of false arrest and false imprisonment are identical under Maryland law: '1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification.'" Pegues v. Wal-Mart Stores, Inc., 63 F. Supp. 3d 539, 542 (D. Md. 2014) (quoting Heron v. Strader, 361 Md. 258, 264, 761 A.2d 56, 59 (2000)).  The existence of an arrest warrant is proof of legal justification for defendants to arrest plaintiff.  Waker v. Owen, No. RWT-09-2380, 2010 WL 1416145, at *4 (D. Md. Apr. 6, 2010) (citing Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998), Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 182 (4th Cir. 1996), Montgomery Ward v. Wilson, 339 Md. 701, 721, 664 A.2d 916, 926 (1995)).

The parties here do not dispute the first two elements in that plaintiff's liberty was deprived by defendants without plaintiff's consent upon his arrest.  Plaintiff claims there is a factual dispute regarding the third element, that is, whether there was legal justification for his arrest.  As discussed above, however, the record clearly establishes that there was legal justification for the deprivation of plaintiff's liberty in that there was a valid warrant for plaintiff's arrest.  Thus, summary judgment for defendants on Counts 4 and 5 is granted.

### B.  Malicious Prosecution

Plaintiff asserts that the three charges filed by defendant Detweiler following plaintiff's arrest resulted in malicious prosecution.  Plaintiff filed two claims regarding this: Count 2 – malicious prosecution based on § 1983; and Count 8 – malicious prosecution based on state law.

Defendants argue that summary judgment is appropriate on these claims because plaintiff cannot demonstrate that a genuine issue of material fact exists as to whether there was probable cause for the charges or whether defendant Detweiler acted with malice in bringing the charges.  Plaintiff maintains that facts omitted by defendant Detweiler in his Statement of Probable Cause create genuine issues of material fact as to the existence of probable cause and malice.

A Maryland state law malicious prosecution claim requires four elements: 1) a criminal proceeding; 2) termination of said criminal proceeding in favor of the accused; 3) absence of probable cause; and 4) malice or a primary purpose other than bringing an offender to justice. Montgomery Ward v. Wilson, 339 Md. at 714, 664 A.2d at 922.  Plaintiff's federal malicious prosecution claim pursuant to § 1983, regarding plaintiff's Fourth Amendment rights against illegal seizure, requires the first three of these elements, but not a showing of malice.  Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183 n.5 (4th Cir. 1996).[6]  Here, the parties agree that a criminal proceeding took place and that plaintiff was acquitted on the three charges brought by defendant Detweiler but disagree as to element three, whether there was an absence of probable cause, and element four, whether defendant Detweiler acted with malice.  (ECF No. 28-1 at 11-12; ECF No. 31 at 16-20).

Plaintiff argues that defendant Detweiler's Statement of Probable Cause "withheld material information" because it omitted two important facts: 1) that plaintiff was not informed of the arrest warrant prior to his arrest; and 2) that plaintiff was arrested due to plaintiff's failure to retrieve his

---

[6] Additionally, plaintiff's malicious prosecution claim pursuant to § 1983 only applies "to the extent that [plaintiff] was wrongfully arrested and detained for the period prior to his initial appearance before a neutral magistrate."  Gray v. Maryland, 228 F. Supp. 2d 628, 637 (D. Md. 2002).  Defendants argue that, because of this limitation, plaintiff cannot show damages because he was already in custody due to the second degree assault charges filed by Ms. Wilson.  (ECF No. 28-1 at 11).  The court does not need to reach this argument given the court's conclusion that there was probable cause for the charges.

identification.  (ECF No. 31 at 12).  Defendant Detweiler's Statement of Probable Cause stated that plaintiff was arrested pursuant to the warrant and that plaintiff did not comply with the order to turn around and put his hands behind his back.  (ECF No. 28-8).  Plaintiff maintains that a genuine dispute of material fact exists as to whether the District Court Commissioner would still have found probable cause for defendant Detweiler's charges if the two omitted facts had been included in the Statement of Probable Cause.

Probable cause "means a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of."  Havilah Real Property Services, LLC v. Early, 216 Md. App. 613, 624, 88 A.3d 875, 882 (2014) (quoting One Thousand Fleet Ltd. P'ship v. Guerriero, 346 Md. 29, 37, 694 A.2d 952, 956 (1997)).  "Probable cause must . . . be absent to sustain a claim for malicious prosecution."  Silvera v. Home Depot U.S.A., Inc., 189 F. Supp. 2d 304, 310-11 (D. Md. 2002) (citing DiPino v. Davis, 354 Md. 18, 54-55, 729 A.2d 354, 373 (1999)).  "The existence of probable cause is a question to be determined as a matter of law by the court upon a given set of facts from which only one inference can be drawn.  When the facts are disputed or more than one inference can be drawn from a given set of facts, the question must be submitted to the jury . . . ."  Kimbrough v. Giant Food Inc., 26 Md. App. 640, 648, 339 A.2d 688, 693 (1975).  In this case, the District Court Commissioner found there was probable cause for defendant Detweiler's three charges.  Despite plaintiff's argument that the two omitted facts call this finding of probable cause into question, an examination of each of the three charges establishes that these omitted facts are not material and that there was probable cause for each of the charges.

Plaintiff's first charge was for "willfully fail[ing] to obey a reasonable and lawful order of a law enforcement officer, to wit, place hands behind his back," citing Md. Code Ann. Crim. Law

§ 10-201(c)(3).  (ECF No. 28-8 at 8).  Plaintiff argues that probable cause was lacking for this charge because defendant Detweiler omitted the fact that defendants did not tell plaintiff that there was a warrant for his arrest prior to his arrest.  Therefore, plaintiff maintains, defendant Brown's order was not reasonable or lawful because plaintiff did not know why he was being arrested. (ECF No. 31 at 17-18).  Under the circumstances presented at the time of plaintiff's arrest pursuant to the arrest warrant, it was objectively "reasonable and lawful" for defendants to direct plaintiff to turn around and put his hands behind his back.  See, e.g., Ross v. Early, 746 F.3d 546 (4th Cir. 2014) (finding that officer's repeated order to move leafleting activity to designated area was reasonable and lawful), Martin v. Mendoza, 230 F. Supp. 2d 665 (D. Md. 2002) (finding that the officer's order to depart the station was lawful).  Plaintiff fails to cite any caselaw that supports his proposition that an officer's order to turn around and put your hands behind your back is not reasonable or lawful if the person does not know there is a warrant for their arrest.  Defendants had the right to take appropriate action to place plaintiff under arrest and plaintiff did not comply with those directives.  Thus, there was probable cause for this charge and the omission of the fact in the Statement of Probable Cause that defendants did not inform plaintiff of the warrant does not create a dispute of material fact.

Plaintiff's second charge states that plaintiff "did intentionally and knowingly obstruct and hinder a police officer, [defendant] Detweiler, in the performance of his lawful duties."  (ECF No. 28-8 at 8).  This charge requires the following: "1) A police officer engaged in the performance of a duty; (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) Knowledge by the accused of facts comprising element (1); and (4) Intent to obstruct or hinder the officer by the act or omission constituting element (2)." Titus v. State, 423 Md. 548, 558-59, 32 A.3d 44, 50-51 (2011) (citing Cover v. State, 297 Md. 398,

466 A.2d 1276 (1983)).  Here, plaintiff maintains that there was no probable cause regarding

element four, because he did not intend to obstruct defendant Detweiler.  Instead, plaintiff asserts

that he intended to comply with defendants' order to retrieve his identification.  (ECF No. 31 at

20).  Yet, plaintiff was given an order to turn around and place his hands behind his back and did

not obey that order, therefore obstructing defendants' performance of their duties.  Plaintiff admits

that he disobeyed this order, stating that he "was trying to step away from [defendants]" and

"pulling in the opposite direction."  (ECF No. 28-2 at 46:10-14, 47:2-8).  Given that the "existence

of probable cause is a question to be determined as a matter of law by the court upon a given set

of facts from which only one inference can be drawn," and the only inference that can be drawn

here is that plaintiff intended to disobey defendants' order to place his hands behind his back,

probable cause for this charge exists as a matter of law.  Kimbrough, 26 Md. App. at 648, 339

A.2d at 693.

Plaintiff's third charge states that plaintiff "did intentionally resist/interfere with a lawful

arrest," citing Md. Code Ann. Crim. Law § 9-408(b)(1).  (ECF No. 28-8 at 9).  Plaintiff argues

there was no probable cause for this charge because plaintiff did not have the intent to resist a

lawful arrest due to the fact that, at the time of his arrest, he did not know about the warrant.  (ECF

No. 31 at 19).  This charge, however, "requires that a defendant know that a law enforcement

officer is attempting to arrest him and that the defendant resists the arrest intentionally."  Rich v.

State, 205 Md. App. 227, 239 n.3, 44 A.3d 1063, 1070 n.3 (2012).  Therefore, the question of

whether there is probable cause does not turn, as plaintiff argues, on whether plaintiff intentionally

resisted an arrest he *knew to be* lawful, but rather whether plaintiff intentionally resisted an arrest

that *was* lawful.  Here, there is no dispute that plaintiff knew defendants were attempting to arrest

him and that plaintiff intentionally resisted arrest.  Plaintiff admits that he did not comply with

defendants' order to put his hands behind his back and resisted defendants' attempts to handcuff him.  (ECF No. 28-2 at 46:10-14, 47:2-8).  Further, it is undisputed that a valid arrest warrant existed for plaintiff and, therefore, that plaintiff's arrest was lawful.  Souder, 2009 WL 4348831, at *3.  Accordingly, there is no dispute of fact regarding whether plaintiff intentionally resisted a lawful arrest, and, therefore, probable cause for this charge exists as a matter of law.  Kimbrough, 26 Md. App. at 648, 339 A.2d at 693.

Based upon the foregoing analysis, the court concludes that element three of plaintiff's malicious prosecution claims is not met because "[p]robable cause must . . . be absent to sustain a claim for malicious prosecution."  Silvera, 189 F. Supp. 2d at 310-11; see also Hoai Thanh v. Ngo, No. PJM-11-1992, 2015 WL 2227916, at *3 (D. Md. May 8, 2015) ("Lack of probable cause cannot be found where reasonable minds could differ as to the tenability of the original claim.").  Given that plaintiff's federal malicious prosecution claim pursuant to § 1983 requires the absence of probable cause, in addition to a criminal proceeding and the termination of said criminal proceeding in favor of the accused, this claim must fail, and summary judgment is appropriate for defendants as to Count 2.

Plaintiff's state law malicious prosecution claim requires an additional fourth element, that defendant Detweiler acted with "malice or a primary purpose other than bringing [plaintiff] to justice" by filing these charges.  Montgomery Ward, 339 Md. at 714, 664 A.2d at 922.  " [I]n malicious prosecution actions, the plaintiff must establish that the defendant committed the tort with some improper purpose or motive.  Mere negligence in instituting unjustified criminal proceedings against the plaintiff cannot satisfy the 'malice' element."  Id. at 719, 925.  Malice "may be inferred from a lack of probable cause."  Id. at 717, 924.  Here, plaintiff does not offer any specific evidence of malice regarding defendant Detweiler's actions, but rather maintains that

malice can be inferred from a lack of probable cause. (ECF No. 31 at 20). As discussed above, the court has determined that probable cause existed for the three charges filed against plaintiff. Therefore, plaintiff's argument that malice may be inferred from a lack of probable cause fails.

In sum, there is no genuine issue of material fact surrounding plaintiff's federal or state malicious prosecution claims because probable cause existed for defendant Detweiler's three charges and there is no evidence of malice. Accordingly, summary judgment for defendants on Counts 2 and 8 is warranted.[7]

### C. **Excessive Force**

Defendants assert that summary judgment is appropriate on plaintiff's claims of excessive force: Count 3 – battery under state law; and Count 7 – claim for violation of Maryland Declaration of Rights Article 26 protections against excessive force.[8] (ECF No. 28-1 at 14-16). Defendants argue that their use of force was objectively reasonable, while plaintiff maintains that defendants' use of force was unreasonable under the circumstances and "violated police policies, practices and procedures." (ECF No. 31 at 22-25).

Excessive force claims, including Article 26 of the Maryland Declaration of Rights claims and Maryland state law battery claims, are analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395 (1989), Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994), Hines v. French, 157 Md. App. 536, 574-75, 852 A.2d 1047, 1069 (2004). "[T]he inquiry . . . in an excessive force case is whether the degree of force used by the

---

[7] Although plaintiff brings these claims against defendants Brown and Detweiler, the court notes that defendant Detweiler alone filed these charges against plaintiff. Therefore, plaintiff's claims against Brown fail and summary judgment for defendant Brown is also appropriate.

[8] Plaintiff also asserts another claim on Count 7 for arrest and false imprisonment which is discussed above.

officer was 'objectively reasonable in light of the facts and circumstances confronting [them].'"
Bibum v. Prince George's Cnty., 85 F. Supp. 2d 557, 563 (D. Md. 2000) (quoting Graham, 490
U.S. at 396-97).  This inquiry "requires careful attention to the facts and circumstances of each
particular case," Graham, 490 U. S. at 396, including "the relationship between the need for the
use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by
the officer to temper or to limit the amount of force; the severity of the security problem at issue;
the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."
Lombardo v. St. Louis, No. 20-391, slip op. at 3 (S. Ct. June 28, 2021) (quoting Kingsley v.
Hendrickson, 576 U.S. 389, 397 (2015)).   This list of factors is not exclusive, and
"only . . . illustrate[s] the types of objective circumstances potentially relevant to a determination
of excessive force."  Kingsley, 576 U.S. at 397.  "At the summary judgment stage, once the
evidence is viewed in the light most favorable to the nonmovant, 'the question of whether the
officer's actions were reasonable is a question of pure law.'"  Dobbs v. Townsend, 416 F. Supp.
3d 441, 449 (D. Md. 2019) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011)).

The court, in reviewing the facts and circumstances in this case, finds that defendants' use
of force was objectively reasonable and, therefore, not excessive.  First, the court considers the
need for the use of force and the amount of force used.  In this case, in an effort to arrest plaintiff
on the outstanding warrant, defendant Brown ordered plaintiff to turn around and put his hands
behind his back.  (ECF No. 31-11, def. Brown video, at 5:50-5:56).  Plaintiff did not obey this
order, despite the fact that defendants repeated the order several times.  Instead, plaintiff backed
away with his hands in the air.  (Id. at 5:53-6:18).  Given that plaintiff was not complying with
their repeated orders and was retreating from the officers, defendants had no choice other than to
use force in order to effect the arrest.  Plaintiff argues that his expert witness, Dr. Tyrone Powers,

believes that the techniques used by defendants to effect plaintiff's arrest "violated police policies, practices and procedures." (ECF No. 31 at 24). Dr. Powers' opinion alone, however, does not create a dispute of fact because "[a] court must make [its excessive force] determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley, 576 U.S. at 397 (citing Graham, 490 U.S. at 396). Here, defendants acted reasonably to effect plaintiff's arrest after plaintiff refused to comply with their orders both to exit the house and to turn around and place his hands behind his back. The use of force was necessitated by plaintiff's non-compliance with defendants' directive, and the fact that defendants had to take plaintiff to the ground and place him face down in order to handcuff him was reasonable given plaintiff's refusal to obey defendants' orders.

The second factor focuses on the extent of plaintiff's injury which, based on the evidence of record here, was not significant. Plaintiff argues that the arrest caused injury to his neck and shoulder, but he has failed to produce any medical records or testimony regarding his medical condition. Plaintiff testified that he sought medical attention immediately following the arrest on October 18, 2018, but no records were produced regarding this emergency room visit. Additionally, there is no evidence that plaintiff sought any medical treatment from October 18, 2018 until he began physical therapy in June of 2020, a few months after this lawsuit was filed and nearly one and a half years after his arrest. Plaintiff has not offered any medical evidence of the causal connection between his physical therapy and any injury suffered as a result of his arrest. (ECF No. 28-5 at 80:1-13). Therefore, the lack of evidence establishing that plaintiff suffered a significant injury resulting from defendants' use of force weighs in defendants' favor that their use of force was objectively reasonable.

The third factor, whether defendants made an effort to temper or limit their use of force, also weighs in defendants' favor.  Defendants made attempts to limit the amount of force because they spoke with plaintiff for several minutes before it became clear that plaintiff would not leave the house and that he would have to be arrested inside.  Defendants instructed plaintiff to turn around and put his hands behind his back multiple times before using the amount of force necessary to handcuff plaintiff and place him under arrest.  (ECF No. 31-11, def. Brown video, at 1:18-6:36).

As to the fourth and fifth factors, the severity of the security problem at issue, and the threat reasonably perceived by defendants, both mitigate against a finding of excessive force.  Defendants were aware that Ms. Wilson had filed a protective order and criminal charges against plaintiff. (ECF No. 28-3 at 24:22-25:10; ECF No. 28-4 at ¶¶ 4, 5).  Defendants were responding to a call from plaintiff's wife regarding a physical altercation.  (ECF No. 28-3 at 23:7-8).  Plaintiff refused to leave the house where Ms. Wilson and at least one of plaintiff's children were present.  (ECF No. 31-11, def. Brown video, at 1:18-5:56).  These circumstances would reasonably cause defendants to conclude there had been, and would be, a volatile and potentially dangerous situation in plaintiff's home.  "[P]olice officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.  Defendants here made the reasonable "split-second" judgment to exert the necessary amount of force in order to arrest plaintiff and remove him from the home after plaintiff refused to follow defendants' instructions.

Finally, the court considers whether plaintiff was actively resisting defendants.  In this case, plaintiff did not obey defendant Brown's order to turn around and put his hands behind his back. (ECF No. 31-11, def. Brown video, at 5:50-8:02; ECF No. 28-2 at 46:10-14, 47:2-8).  Plaintiff testified that he "was trying to step away from [defendants]" and "pulling in the opposite

direction." (ECF No. 28-2 at 46:10-14, 47:2-8). While his initial resistance to arrest was not aggressive, it was nonetheless resistance that would reasonably cause defendants to believe that the use of force was necessary.

For the foregoing reasons, the court concludes that the degree of force used by defendants was "objectively reasonable in light of the facts and circumstances confronting them." Bibum, 85 F. Supp. 2d at 563.[9] Therefore, summary judgment for defendants on Count 3 and Count 7 is appropriate.

### D.  Qualified Immunity

Defendants argue that they are entitled to qualified immunity regarding plaintiff's federal claims: Count 1 – § 1983 for unlawful search and seizure and excessive force; and Count 2 – § 1983 for malicious prosecution. (ECF No. 28-1 at 16-18). Plaintiff asserts that, because

---

[9] This conclusion is consistent with other cases decided in this court in which summary judgment has been granted. See, e.g., Dobbs, 416 F. Supp. at 441 (finding no excessive force when defendants fired rubber bullets at plaintiff, striking him once in the abdomen and once in the face, when he did not comply with orders to exit his apartment), Souder, 2009 WL 4348831, at *1 (finding no excessive force when defendant pulled plaintiff out of the door of his apartment after plaintiff refused to exit), Kitchen v. Ickes, 116 F. Supp. 3d 613, 626-29 (D. Md. 2015) (finding no excessive force when defendant used pepper spray on plaintiff to break up a fight between prison inmates), Newman v. Green, 198 F. Supp. 2d 664, 668-69 (D. Md. 2002) (finding no excessive force when defendant wrestled with plaintiff, who was actively resisting arrest, in order to handcuff him). By contrast, summary judgment has been denied in cases which are factually dissimilar to this case. See, e.g., Young v. Prince George's Cnty., 355 F.3d 751, 757 (4th Cir. 2004) (finding a genuine issue of material fact existed as to whether defendants' actions were objectively reasonable as a matter of law when defendants threw plaintiff, who was already handcuffed, to the ground and struck him on the head and back), Cowles v. Peterson, 344 F. Supp. 2d 472, 482-84 (E.D. Va. 2004) (finding that "it is clear that the alleged assault and battery of [p]laintiff . . . is sufficient to establish a violation of Plaintiff's Fourth Amendment right against excessive use of force" when defendant struck plaintiff in the head twice with a can of mace while plaintiff was not attempting to flee).

defendants violated plaintiff's clearly established constitutional rights, defendants are not entitled to qualified immunity.  (ECF No. 31 at 25-30).

A court determining whether an officer has qualified immunity must consider two factors: 1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and 2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted).  A right is considered to be "clearly established" when the "contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  Where there is no precedent that squarely governs a specific set of facts, qualified immunity is proper.  Mullenix v. Luna, 577 U.S. 7, 11-12 (2018).  The court may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.

Here, the first prong is not met because, as discussed above, plaintiff's constitutional rights were not violated.  Plaintiff's Fourth and Fourteenth Amendment rights were not violated regarding his arrest and imprisonment because a valid warrant existed at the time of plaintiff's arrest.  Souder, 2009 WL 4348831, at *3.  Plaintiff's Fourth Amendment rights regarding malicious prosecution were not violated because there was probable cause for defendant Detweiler's three charges and, therefore, plaintiff's seizure and detention were reasonable.  Brooke, 85 F.3d at 184.  Plaintiff's Fourth Amendment rights regarding excessive force were not violated because the court determined, as a "question of pure law," that defendants' actions were objectively reasonable.  Dobbs, 416 F. Supp. at 449.

24

Even if this court found that plaintiff's constitutional rights were violated and the first prong was met, there is no caselaw to establish that plaintiff's rights at issue here were "clearly established." "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." <u>Ashcroft</u>, 563 U.S. at 741.  Plaintiff has not cited any authority to support this second prong.  To the contrary, the court notes the factual similarity between this case and <u>Souder</u>, in which the plaintiff was pulled out of a door in order to effect an arrest pursuant to a warrant when the plaintiff refused to obey the defendant officer's instructions to step outside of the house. <u>Souder</u>, 2009 WL 4348831, at *1-2.  In that case, however, this court determined that the defendants' use of force was not excessive, and that defendant was entitled to qualified immunity. <u>Id.</u> at *6-7.  Because neither of the two required prongs to defeat a finding of qualified immunity have been established, defendants are entitled to qualified immunity on Counts 1 and 2.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, defendants' Detweiler and Brown's Motion for Summary Judgment (ECF No. 28) is GRANTED.  A separate order will be issued.

July 28, 2021                                          _____/s/_____
                                                       Beth P. Gesner
                                                       Chief United States Magistrate Judge

25